**NOT FOR PUBLICATION**

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| ANTHONY NAPPI, | Civil Action No.: 11-cv-2832 (CCC-JBC) |
| Plaintiff, | |
| v. | **OPINION** |
| HOLLAND CHRISTIAN HOME ASSOCIATION and PAUL DE BOER, | |
| Defendants. | |

**CECCHI, District Judge.**

## I. INTRODUCTION

This matter comes before the Court upon the Motion of Defendants Holland Christian Home Association ("HCH") and Paul DeBoer ("DeBoer" and, collectively, "Defendants") for Summary Judgment [ECF No. 49] against Plaintiff Anthony Nappi ("Plaintiff" or "Nappi"). The Court has carefully considered the submissions made in support of and in opposition to the instant motion. The Court did not hear oral argument pursuant to Federal Rule of Civil Procedure 78. Based on the reasons that follow, Defendants' Motion for Summary Judgment with respect to Plaintiff's religious discrimination claim under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e) ("Title VII"), is granted as to Defendant DeBoer and is denied as to Defendant HCH. Defendants' Motion for Summary Judgment with respect to Plaintiff's religious discrimination claim under the New Jersey Law Against Discrimination, N.J.S.A. 10:5-1 et seq. ("NJLAD"), is granted.

1

## II. BACKGROUND[1]

### A. Commencement of Plaintiff's Employment with HCH

On or about May 8, 2008, DeBoer, the Director of Maintenance for HCH, hired Plaintiff for the position of maintenance/HVAC worker. In the position of maintenance/HVAC worker at HCH, Plaintiff was responsible for HVAC maintenance and for the overall maintenance of HCH's building and its grounds. DeBoer was Plaintiff's supervisor, was responsible for staffing HCH's maintenance department and had the authority to hire and fire maintenance employees.

On May 8, 2008, Plaintiff received a copy of the HCH Employee Handbook. The first ninety days of Plaintiff's employment were a probationary period. According to the Employee Handbook, this three-month period "gives [HCH] a chance to find out about whether [the employee's] work, attitude, attendance, and other employment-related considerations measure up to [HCH's] standards of a good employee." Affidavit of Kelly D. Gunther in Support of Defs.' Mot. Summ. J. ("Gunther Aff."), Ex. H, at 6. HCH's "Guidelines for Appropriate Conduct" state "examples of conduct which may result in corrective action, up to and including discharge," and those examples include "[r]udeness, fighting or using obscene, abusive or threatening language or gestures." Defs.' Statement of Undisputed Material Facts (hereinafter, "Defs.' SUMF") ¶¶ 18-19.

### B. Discussions of Religion During Employment

HCH is not affiliated with any particular religion. Plaintiff's religion is Roman Catholic. DeBoer identifies his religion as "Non-Denominational Christian." During the term of Plaintiff's employment, DeBoer supervised Plaintiff and four additional people on the maintenance staff: Jay

---

[1] Unless otherwise indicated, the facts are drawn from the parties' statements of undisputed facts. As required on a motion for summary judgment, the Court will consider the facts in the light most favorable to the non-moving party, and will make all reasonable inferences in the non-moving party's favor. Hugh v. Butler Cnty. Family YMCA, 418 F.3d 265, 267 (3d Cir. 2005).

Nelson ("Nelson"), Bruce Steyling ("Steyling"), Pete Spalt ("Spalt"), and Ron Bogerman ("Bogerman"). Nelson identifies his religion as "Christian Reformed" and Steyling identifies his religion as "Protestant." DeBoer testified that Spalt is "Christian Reformed." DeBoer Dep. 16:10-12, Nov. 15, 2013, Gunther Aff., Ex. C. The record does not clearly identify Bogerman's religious affiliation, if any.

According to Plaintiff, during his employment at HCH other employees on the maintenance staff, including DeBoer, Steyling and Nelson, often discussed religion during coffee or lunch breaks, criticized Plaintiff's religion and encouraged Plaintiff to convert to "their churches." Pl.'s Counterstatement of Undisputed Material Facts (hereinafter, "Pl.'s CSUMF") p. 2 ¶¶ 4-5[2]; Nappi Dep. 144:9–151:6, Nov. 5, 2013, Gunther Aff., Ex. F. Plaintiff did not articulate the exact dates, the number of instances or the names of people present during these conversations; however, Plaintiff specified that on at least one occasion, DeBoer, Steyling and Nelson called Catholicism a "Mickey Mouse religion" and criticized Catholics for worshipping saints. Nappi Dep. 144:9-145:8. On at least one other occasion, Plaintiff alleges that DeBoer told Plaintiff that he used to

---

[2] Defendants urge the Court to reject Plaintiff's CSUMF and his Certification submitted in opposition to the instant motion, based on the "sham affidavit" doctrine. Defs.' Reply 8-9. This Court may disregard Plaintiff's Certification to the extent that it contradicts his prior testimony. See Jiminez v. All American Rathskeller, Inc., 503 F.3d 247, 254 (3d Cir. 2007) (noting that "[t]he main practical reason supporting the sham affidavit doctrine is that prior depositions are more reliable than affidavits"). As indicated below, the Court relies primarily on Plaintiff's deposition testimony in determining that an issue of material fact exists. Further, regardless of any issues with Plaintiff's Certification or Rule 56.1 Statement, in reviewing a motion for summary judgment, "[t]he court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3); see also Badrinauth v. MetLife Corp., No. 04-2552, 2008 WL 906459, at *3 (D.N.J. Apr. 3, 2008) (drawing facts from available sources including discovery materials where party opposing summary judgment failed to file Rule 56.1 statement); Jordan v. Allgroup Wheaton, 218 F. Supp. 2d 643, 646 n.2 (D.N.J. 2002) (where documents annexed to plaintiff's motion papers were "of little or no relevance to his claims," Court therefore drew relevant facts underlying plaintiff's claims from other sources, including his deposition testimony, Defendants' Statement of Undisputed Material Facts, and exhibits).

attend Plaintiff's church, St. Mary's, but that he had left St. Mary's to become a "reformed Christian," Nappi Dep. 146:8; Plaintiff alleges that DeBoer "encourag[ed] Plaintiff to do the same." Pl.'s CSUMF p. 3 ¶ 7.[3] In addition, Plaintiff alleges that the other men on the maintenance staff "gave him literature about their churches," and that from time to time he found religious literature, including pamphlets, in his locker at work. Pl.'s CSUMF p. 3 ¶ 5; Nappi Dep. 148:2-7.

Plaintiff also claims that he overheard Steyling refer to him as "Guinea Nappi," Compl. ¶ 8; Nappi Dep. 161:14-162:9, and that he overheard Steyling tell Nelson that he wanted to shoot Plaintiff and shoot DeBoer for hiring Plaintiff. Nappi Dep. 143:24-144:8.[4] During his employment with HCH, Plaintiff brought this alleged incident to DeBoer's attention, DeBoer discussed Plaintiff's allegation with Nelson and Steyling, and Nelson and Steyling denied the allegation. Defs.' SUMF ¶ 42.

Defendants deny that DeBoer, Nelson or Steyling ever discussed religion with Plaintiff during Plaintiff's employment at HCH. Defs.' SUMF ¶¶ 7-9. DeBoer, Nelson and Steyling denied having any knowledge of Plaintiff's religious affiliation while he was employed at HCH, or of any religious literature being placed in Plaintiff's locker. Id. ¶¶ 38, 44.

### C. Termination of Plaintiff's Employment

Plaintiff's employment with HCH was terminated on July 14, 2008, about sixty days after he was hired. On that day, Plaintiff had a dispute with a dietary aide Joel Black ("Black") during

---

[3] It is unclear from the record when or on how many occasions Plaintiff alleges that DeBoer made these comments. In Plaintiff's deposition, he stated that DeBoer told him about leaving St. Mary's to become a reformed Christian when they were "in the shop," Nappi Dep. 146:6-147:6, but in his Counterstatement of Undisputed Material Facts and Certification submitted in opposition to this Motion, Plaintiff alleges that DeBoer told him about leaving St. Mary's, and encouraged him to do the same, on a hiking trip, Pl.'s CSUMF p. 3 ¶ 7; Nappi Cert. Opp. Summ. J. ¶ 8.

[4] Plaintiff does not allege Title VII or NJLAD discrimination claims based on national origin.

4

lunch in the HCH cafeteria (hereinafter, the "kitchen incident"). Plaintiff "refused the food" handed to him by Black because Plaintiff claims he had seen Black lick his hand before touching Plaintiff's plate. Pl.'s CSUMF p. 4 ¶ 13. Plaintiff also refused a second plate offered to him and admits that he probably raised his voice in refusing the plate. Nappi Cert. Opp. Summ. J. ¶ 13.

DeBoer and Steven Schott, HCH's Food Services Director, though not witnesses to the incident, documented the incident with written notes and a signed written statement based on interviews with kitchen staff who witnessed the incident. Defs.' SUMF ¶¶ 30-31; Gunther Aff., Exs. J, K. According to DeBoer's notes and recollection and according to Schott's signed statement, the other kitchen employees reported that they were upset by the incident, that Plaintiff was angry and aggressive, and that Black was too upset to eat his lunch following the incident. Id.; DeBoer Dep. 29:18-32:24. Plaintiff does not dispute that DeBoer and Schott received these reports. See Pl.'s CSUMF p. 1 ¶ 8.

Defendants allege that DeBoer decided to fire Plaintiff because of "a number of performance-related incidents that led DeBoer to believe plaintiff was unable to effectively perform the job," namely the kitchen incident and four other specific incidents that occurred when Plaintiff was asked to paint a trim, to fix a bed, to remove a thermostat cover and to blow out coils on an air conditioning unit. When asked to perform these tasks, Plaintiff was allegedly unable to perform them adequately or take direction. Defs.' SUMF ¶¶ 21-25, 32; DeBoer Dep. 37:6-38:24; 44:4-46:8, 43:21-44:3. Plaintiff testified in his deposition that he did not recall these performance-related incidents. Nappi Dep. 109:13-112:10.

DeBoer called Plaintiff at home on July 14, 2008 and told Plaintiff his employment was terminated. It is undisputed that DeBoer and Plaintiff discussed the kitchen incident on the call, Nappi Dep. 162:14-163:17, but the parties disagree on other elements of the conversation. DeBoer

5

testified at his deposition that during the phone call, "I told [Plaintiff] that I can't have that kind of behavior [referencing the kitchen incident], you know, around seniors, and that I gotta let you go." DeBoer Dep. 46:9-13. Plaintiff contends that during that conversation, DeBoer told Plaintiff that he was being fired because, as a Roman Catholic, he was an "outsider" who did not "fit in."[5] Following DeBoer's call, Plaintiff met with Phyllis Englishman ("Englishman"), Director of Human Resources, HCH's Executive Director Carol Moore and DeBoer regarding his termination, but the meeting ended when Plaintiff angrily accused DeBoer of lying and left. Defs.' SUMF ¶ 34; Englishman Dep. 14:4-14, Nov. 15, 2013. HCH subsequently sent Plaintiff a letter, dated August 11, 2008, documenting the reasons for Plaintiff's termination as "Immediate supervisor is not pleased with employee performance," and "Employee had difficulty following directions from supervisor," and noting that Plaintiff was in his probationary period when his employment was terminated. Termination Letter, Gunther Aff., Ex. I.

Plaintiff received a Notice of Right to Sue from the Equal Employment Opportunity Commission on April 26, 2011. Although plaintiff had filed a Complaint with the New Jersey Division on Civil Rights ("DCR") on August 22, 2008, Plaintiff's DCR case was closed at his request in May 2011. On May 18, 2011, plaintiff filed a Complaint in this Court against Defendants, alleging that his employment was terminated on the basis of his religion in violation of Title VII and the NJLAD. Defendants have moved for summary judgment on both claims.

---

[5] In his Complaint, Plaintiff contends that the argument with Black was used by his employer as a pretext for firing him and that DeBoer told him he was being fired because he "didn't fit in." Compl. ¶¶ 13-14. Plaintiff testified in his deposition that DeBoer told him that he was being fired because he was "not of the Christian faith," which he understood to mean not a Christian in the same sense as DeBoer and the other maintenance staff, who are not Catholic, and that DeBoer said, "If you change your religion, I could probably help you." Nappi Dep. 133:7-22. Finally, in his Certification submitted in opposition to this Motion, Plaintiff asserts that DeBoer said Plaintiff's work was fine, but the problem "was with [Plaintiff's] beliefs." Nappi Cert. Opp. Summ. J. ¶ 14.

6

### III. LEGAL STANDARD

Summary judgment is appropriate if the "depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials" demonstrate that there is no genuine issue as to any material fact, and, construing all facts and inferences in a light most favorable to the non-moving party, "the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56); see also Pollock v. Am. Tel. & Tel. Long Lines, 794 F.2d 860, 864 (3d Cir. 1986).

The moving party has the initial burden of showing the absence of a genuine issue of material fact. See Celotex, 477 U.S. at 323. Once the moving party meets this burden, the non-moving party has the burden of identifying specific facts to show that, to the contrary, there exists a genuine issue of material fact for trial. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). In order to meet its burden, the nonmoving party must "go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Celotex, 477 U.S. at 324; see also Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888 (1990) (stating that "[t]he object of [Rule 56(e)] is not to replace conclusory allegations of the complaint... with conclusory allegations of an affidavit"); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). A fact is "material" if a dispute about that fact "might affect the outcome of the suit under governing [substantive] law," and a "genuine" issue exists as to that fact "if the evidence is such that a reasonable jury could return a verdict for the non[-]moving party." Anderson, 477 U.S. at 248. The Court's role is to determine whether there is a genuine issue for trial, not to weigh the evidence and decide the truth of the matter. Id. at 249.

## IV.  DISCUSSION

### A.  Title VII Claim

Under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-2 et seq., "[i]t shall be an unlawful employment practice for an employer . . . to fail or refuse to hire or to discharge any individual . . . because of such individual's race, color, religion, sex, or national origin . . . ." 42 U.S.C. § 2000e-2(a)(1). Plaintiffs asserting Title VII claims may proceed under either a "pretext theory," which employs the burden-shifting framework in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), or a "mixed-motive theory," as set forth in Price Waterhouse v. Hopkins, 490 U.S. 228 (1989). Makky v. Chertoff, 541 F.3d 205, 213 (3d Cir. 2008).

To establish a prima facie case under a pretext theory, the plaintiff must show that "(1) s/he is a member of a protected class; (2) s/he qualified for the position he sought to attain or retain; (3) s/he suffered an adverse employment action; and (4) the action occurred under circumstances that could give rise to an inference of intentional discrimination." Id. at 214. Once plaintiff has established these four elements, creating an "inference of discriminatory motive" on the part of the employer, the burden shifts to the defendant to "articulate a legitimate, non-discriminatory reason for the adverse employment action." Id. If the defendant meets its burden, "the burden shifts back to the plaintiff to show that the defendant's proffered reason is merely pretext for intentional discrimination." Id.

As for cases proceeding based on a mixed-motive theory, the Civil Rights Act of 1991 clarified the burden-shifting framework that applies to such cases. Under the statute, a plaintiff may establish a violation of Title VII by showing that a protected characteristic "was a motivating factor for an employment practice, even though other factors also motivated the practice." 42 U.S.C. § 2000e-2(m). If the plaintiff proves a violation of section 2000e-2(m), and "[the employer]

demonstrates that [it] would have taken the same action in the absence of the impermissible motivating factor, the court—(i) may grant declaratory relief, injunctive relief . . . and [limited] attorney's fees and costs . . .; and (ii) shall not award damages or issue an order requiring any admission, reinstatement, hiring, promotion or payment . . . ." Univ. of Texas Southwestern Medical Center v. Nassar, 133 S. Ct. 2517, 2526 (2013) (quoting 42 U.S.C. § 2000e-5(g)(2)); see also Sosa v. Napolitano, 318 F. App'x 68, 72 (3d Cir. 2009) (same). In other words, the employer has a limited affirmative defense if it shows that it would have taken the same action in the absence of the discriminatory motive. Desert Palace Inc. v. Costa, 539 U.S. 90, 90 (2003).

To proceed on a mixed-motive theory, the plaintiff "need only present sufficient evidence for a reasonable jury to conclude, by a preponderance of the evidence, that 'race, color, religion, sex, or national origin was a motivating factor for any employment practice.'" Makky, 541 F.3d at 214 (quoting Desert Palace, 539 U.S. at 95). Evidence that an employee's race, color, religion, sex or national origin was a motivating factor for an adverse employment action may take the form of direct or circumstantial evidence. Desert Palace, 539 U.S. at 99-102. Although a mixed-motive case does not necessarily require a plaintiff to plead every element of the McDonnell Douglas prima facie case, "if there is unchallenged objective evidence that [the plaintiff] did not possess the minimal qualifications for the position plaintiff sought to obtain or retain," the plaintiff cannot establish a prima facie case of discrimination under either theory. Makky, 541 F.3d at 215.

Here, Plaintiff appears to proceed on a pretext theory, and both parties brief the motion using the McDonnell Douglas framework. Regardless of which theory is used, however, summary judgment in favor of HCH is inappropriate.

    **1.**    **Pretext Theory**

Defendants argue first that Plaintiff fails to create a genuine issue of material fact as to the

second and fourth elements of the McDonnell Douglas prima facie case. Defs.' Br. Supp. Summ. J. 10-15. As to the second element, Defendants argue that Plaintiff fails to establish that he was qualified for his job, because within Plaintiff's probation period he was unable to perform his duties in a way that met HCH's legitimate expectations. Id. at 11-12. Defendants state that "the overwhelming evidence in the record" supports the conclusion that Plaintiff was not qualified for his job, pointing to the performance-related issues that occurred when Plaintiff was asked to paint a trim, to fix a bed, to remove a thermostat cover and to blow out coils on an air conditioning unit, and to the kitchen incident with Black. Id. The facts surrounding the performance-related incidents are disputed, however, as Plaintiff contests Defendants' account of his poor performance, and the only evidence supporting Defendants' account of Plaintiff's poor performance is DeBoer's testimony and Plaintiff's Termination Letter, see Defs.' SUMF ¶¶ 21-31. Though Defendants' account of the kitchen incident is supported with some additional evidence, see Gunther Aff., Exs. J, K, the kitchen incident was not the only reason for Plaintiff's termination, see Termination Letter. The Court acknowledges that Plaintiff's deposition testimony and his Certification submitted in opposition to the instant motion are somewhat inconsistent, but Plaintiff never admitted that the performance-related problems with the trim, bed, thermostat cover and air-conditioning unit occurred.[6]

Furthermore, while it is appropriate to consider objective job qualifications as part of

---

[6] Plaintiff testified at his deposition that he had no recollection of the performance-related incidents that Defendants contend were reasons for firing him (i.e., the painting job, the bed repair, being instructed to remove a thermostat cover and being asked to blow out coils on an air conditioning unit). Nappi Dep. 109:13-112:1. In Plaintiff's Certification, he expands upon certain of these incidents that he recalled, but disputes Defendants' account of his poor performance. As noted above, the Court may disregard Plaintiff's Certification to the extent it contradicts his prior testimony. Regardless of the Court's approach to the Certification, and the weight, if any, afforded to it, Plaintiff's deposition testimony demonstrates that Plaintiff does not admit that these performance-related problems occurred.

plaintiff's prima facie case, "the question of whether an employee possesses a subjective quality, such as leadership or management skill, is better left to the later stage of the McDonnell Douglas analysis." Weldon v. Kraft, Inc., 896 F.2d 793, 798-99 (3d Cir. 1990). In Weldon, the Third Circuit agreed with the district court that the plaintiff had established a prima facie case of discrimination even though his employer argued that his poor performance indicated that he was not qualified. Id. There, as here, "[the defendant's] claim that [plaintiff] [could] not establish a prima facie case [wa]s intertwined with its assertion that [plaintiff's] poor performance evaluations constitute[d] a legitimate reason for the discharge," and the defendant "d[id] not contend that [plaintiff] lacked the background qualifications for the position at the time he was hired." Id.; see also Dorsey v. Pittsburgh Assocs., 90 F. App'x 636, 639 (3d Cir. 2004) (concluding that appellees' argument that appellants were not qualified for positions because they lacked computer and customer service skills was intertwined with argument that lack of skills were legitimate reasons for not hiring them, and therefore it was error to decide that appellants had not made out prima facie case of discrimination). Therefore, Plaintiff has not failed to establish the second element of his prima facie case, that he was qualified for the job.

As to the fourth element of Plaintiff's prima facie case, Defendants argue that Plaintiff fails to create a genuine issue of fact as to whether he was fired under circumstances raising an inference of discrimination, because he has produced "no evidence aside from his own subjective views that the decision to discharge hi[m] was motivated by religion." Defs.' Br. Supp. Summ. J. 14. Defendants also point to the fact that not all of Plaintiff's co-workers identified as "Holland Christian Reformed," and that HCH employs at least three Roman Catholics. Id. A plaintiff need not show, however, that all other employees with his background also suffered adverse employment action in order to show circumstances giving rise to an inference of discrimination.

11

The elements of a prima facie case under McDonnell Douglas depend on the facts of the case. See Jones v. Sch. Dist. of Phila., 198 F.3d 403, 411 (3d Cir. 1999); Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 253 n.6 (1981) (noting that although McDonnell Douglas described one model for a prima facie case of discrimination, where a minority plaintiff must show that after his rejection the position remained open and employer continued to seek applicants from persons of plaintiff's qualifications, that standard was "not inflexible" and would vary with different factual situations).

Here, Plaintiff testified that DeBoer told Plaintiff he was being fired because of his religion. This evidence, either alone or with Plaintiff's other testimony about the comments from his peers and supervisor, viewed in the light most favorable to Plaintiff, clearly gives rise to an inference of discrimination. Although Defendants deny that DeBoer or Plaintiff's co-workers ever critized Plaintiff's religion, and Defendants have highlighted inconsistencies between the Plaintiff's Complaint, his deposition testimony and his Certification on this point, "[s]ummary judgment is inappropriate where there is an issue of credibility that is appropriate for the jury." Carlson v. Arnot-Ogden Memorial Hosp., 918 F.2d 411, 415 (3d Cir. 1990) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986)); see also Page v. Payless Shoe Source, Inc., 2012 WL 28786, No. 10-2793, at *5 (D.N.J. Jan. 5, 2012) ("[T]he Court must go beyond the observation that the parties disagree about a serious allegation and determine if the statement has significance and materiality . . . . If so, a jury must decide whether it believes plaintiff or [plaintiff's supervisor]."). In addressing whether Plaintiff has met his burden to show pretext, Defendants argue that Plaintiff's testimony alone is insufficient to defeat summary judgment. The Court will address that argument in the context of the pretext analysis below.

As Defendants have proffered legitimate, non-discriminatory reasons for Plaintiff's

termination—his performance-related issues and the kitchen incident—Defendants next argue that Plaintiff fails to create a genuine issue of material fact as to whether their proffered explanations for his termination were pretextual. To survive summary judgment once an employer proffers legitimate reasons for its action, "the plaintiff must point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." Fuentes v. Perskie, 32 F.3d 759, 764 (3d Cir. 1994). More specifically, to make the requisite showing of pretext, the plaintiff's evidence "must allow a factfinder reasonably to infer that each of the employer's proffered non-discriminatory reasons . . . was either a post hoc fabrication or otherwise did not actually motivate the employment action . . . ." Id. Defendants correctly argue that Plaintiff cannot meet his burden merely by presenting evidence that their decision to fire him was wrong or mistaken, see id. at 765, but the Court's focus is not on Plaintiff's version of his alleged performance-related problems; it is on Plaintiff's testimony regarding DeBoer's discriminatory comments when he fired Plaintiff.

Plaintiff's testimony on this point is enough to survive summary judgment.[7] "[T]here is no rule of law that the testimony of a discrimination plaintiff, standing alone, can never make out a case of discrimination that could withstand a summary judgment motion." Weldon v. Kraft, Inc., 896 F.2d 793, 800 (3d Cir. 1990); see also Jackson v. Univ. of Pittsburgh, 826 F.2d 230, 236 (3d Cir. 1987) (same). That is not to say that a plaintiff's testimony alone will always be sufficient to

---

[7] As stated above, the Court disregards Plaintiff's Certification to the extent that it contradicts his prior testimony. Plaintiff stated in his deposition testimony, however, that DeBoer told him he was being fired because his colleagues did not like him because he was Roman Catholic, and that if Plaintiff changed his religion, DeBoer could probably help him. Nappi Dep. 133:7-134:16.

survive summary judgment. Defendants cite cases in which plaintiffs' uncorroborated testimony was insufficient to defeat summary judgment. See, e.g., Pamintuan v. Nanticoke Mem'l Hosp., 192 F.3d 378, 387 (3d Cir. 1999) (plaintiff doctor's statements that she did not have the significant clinical deficiencies complained of by her employer were insufficient to create issue of material fact). Importantly, in Pamintuan, the plaintiff's testimony was insufficient to survive summary judgment because it was "limited to the claim that her medical care was not deficient," i.e., that "the decision regarding her competence as a physician was wrong." 192 F.3d at 387. Thus, the Third Circuit explained, the plaintiff's testimony was distinguishable from that of plaintiffs in Weldon and Jackson, where "the plaintiffs offered testimony that, if believed, gave clear indication that they were discriminated against and treated differently because of their race." Id.

In other cases cited by Defendants, the plaintiffs' self-serving testimony was not only uncorroborated, but was also vague, inconclusive or presented only limited, circumstantial evidence of discriminatory motive. See Solomon v. Soc'y of Auto. Eng'rs, 41 F. App'x 585, 586 (3d Cir. 2002) (plaintiff's reliance only on his testimony that female supervisor favored female employees, that his computer did not work but his female colleagues' computers did, that his duties were assigned to female co-workers and that his supervisor was hostile toward men were insufficient to avoid summary judgment); Cridland v. Kmart Corp., 929 F. Supp. 2d 377, 389 (E.D. Pa. 2013) (holding that plaintiff's vague, uncorroborated testimony as to discriminatory treatment—he "guess[ed] there were maybe half a dozen times" when he received negative comments about his age—were insufficient to survive summary judgment, noting that alleged comments about age qualified as "stray remarks unconnected from an adverse employment decision") (internal quotations omitted); Bodison v. Univ. of Med. and Dentistry of N.J., No. 07-2616, 2009 WL 1298502, at **2-3 (D.N.J. May 8, 2009) ("The Court does not believe that

14

Plaintiff's uncorroborated statement, <u>particularly in as much as his statements are inconclusive,</u> crosses th[e] sufficiency threshold," to survive summary judgment) (emphasis added).

Here, by contrast with cases where the plaintiff's own testimony was insufficient to create a genuine issue of fact, Plaintiff's testimony is that DeBoer directly told him that his religion was a substantial motivating factor in the decision to fire him. His testimony is not limited to suggesting that Defendants' assessments of his performance were wrong, or adducing various stray remarks or incidents that merely suggest discriminatory motive. Moreover, his testimony is about a specific incident of which he has personal knowledge, rather than being limited to his subjective beliefs. Cf. Jones, 198 F.3d at 414 (concluding that there was insufficient evidence to support plaintiff's claim of pretext where plaintiff "ma[de] numerous allegations in his affidavit which he predicate[d] on nothing more than his beliefs without having actual knowledge of them"). While the Court acknowledges that Defendants, and possibly jurors, may find Plaintiff's version of events not to be credible, credibility assessments are the province of the factfinder. Weldon, 896 F.2d at 800 ("The issue of pretext in this case turns largely on the credibility of the competing testimony. As such, it is inappropriate to decide on a motion for summary judgment."). Therefore, a genuine issue of material fact exists as to whether the Defendants' proffered reasons for firing Plaintiff were pretextual.

### 2. Mixed-Motive Theory

Under a "mixed-motive" theory of discrimination under Title VII, which may be appropriate in light of the facts of this case, Plaintiff presents direct evidence of DeBoer's discriminatory motive in the form of his own testimony. Direct evidence of discrimination is usually assessed in the context of a mixed-motive theory. See Trans World Airlines, Inc. v. Thurston, 469 U.S. 111, 112 (1985) ("The McDonnell Douglas test is inapplicable where the

plaintiff presents direct evidence of discrimination."); Fakete v. Aetna, Inc., 308 F.3d 335, 340 (3d Cir. 2002) (same), abrogated on other grounds, Gross v. FBL Fin. Servs., 557 U.S. 167, 167 (2009); Page, 2012 WL 28786, at *6 (applying Price Waterhouse analysis instead of McDonnell Douglas where plaintiff claimed that she was told directly that she would not be hired on account of her race). "The most obvious and compelling example [of direct evidence] would be a remark to the effect that . . . 'I'm firing you because you're not a Christian.'" Satz v. Taipina, No. 01-5921, 2003 WL 22207205, at *19 (D.N.J. Apr. 15, 2003) (internal citations omitted).

As noted previously, Plaintiff testified that DeBoer told Plaintiff he was being fired because of his religion. If true, this would be the epitome of direct evidence of discrimination. Thus, under a mixed-motive theory, the evidence, construed in the light most favorable to the plaintiff, permits a conclusion that Plaintiff's religion was a motivating factor in the decision to fire him. See Makky, 541 F.3d at 214; see also Page, 2012 WL 28786, at *6 (declining to reject plaintiff's "sworn testimony about what [store manager] told her as a mere general allegation," where plaintiff claimed store manager told her she was not hired because of her race).

Although the mixed-motive burden-shifting regime provides employers with a limited affirmative defense if they can show that they would have fired Plaintiff even absent the discriminatory animus, 42 U.S.C. § 2000e-5(g)(2), the parties have not briefed this issue directly, so the Court will not decide whether Defendants are entitled to an affirmative defense at this time. The Court notes, however, that there appears to be a genuine issue of material fact on this point as well. As noted previously, Defendants' evidence of Plaintiff's performance-related problems—with the exception of the kitchen incident, which was concededly not the only reason for Plaintiff's termination—is limited to DeBoer's testimony and the Termination Letter, and Plaintiff disputes Defendants' account of his performance-related issues.

In conclusion, construing the evidence in the light most favorable to the Plaintiff, a genuine issue of material fact exists as to whether religion was the basis for or at least a motivating factor in DeBoer's decision to fire Plaintiff. Based on the foregoing, summary judgment in favor of HCH as to Plaintiff's Title VII claim is inappropriate.[8]

**B.     NJLAD Claim**

Plaintiff asserts that DeBoer terminated him because of his religion, thereby unlawfully discriminating against him in violation of the NJLAD. The NJLAD provides in relevant part: "It shall be an unlawful employment practice, or, as the case may be, an unlawful discrimination: a. For an employer, because of the. . . creed . . . of any individual, to discharge . . . from employment such individual . . . ." N.J.S.A. 10:5-12(a).

There is a two year statute of limitations for all NJLAD claims. Montells v. Haynes, 133 N.J. 282, 292 (1993). Equitable tolling may be appropriate "(1) [if] the defendant has actively misled the plaintiff, (2) if the plaintiff has 'in some extraordinary way' been prevented from asserting his rights, or (3) if the plaintiff has timely asserted his rights mistakenly in the wrong forum." Miller v. Beneficial Management Corp., 977 F.2d 834, 845 (3d Cir. 1992) (internal quotations omitted). Plaintiff filed his Complaint in this Court on May 18, 2011, over two years from the date of the last adverse employment action by HCH, and Plaintiff does not explain the reasons for the delay in bringing his NJLAD claim or argue for equitable tolling of the statute of

---

[8] While Defendants HCH and DeBoer move for summary judgment, Defendants assert in a footnote of their moving brief that they "only analyze th[e Title VII] claim on behalf of defendant HCH," because individuals cannot be liable under Title VII. Defs.' Br. Supp. Summ. J. 7. While Defendants did not explicitly move for summary judgment in favor of DeBoer on this point, the Court agrees that DeBoer may not be held liable as an individual for a Title VII violation and therefore grants summary judgment on the Title VII claim as to DeBoer only. See Discenza v. Hill, 221 F. App'x 109, 111 (3d Cir. 2007) ("[I]ndividual employees may not be held liable under Title VII.") (citing Sheridan v. E.I. DuPont de Nemours & Co., 100 F.3d 1061, 1077-78 (3d Cir. 1996) (en banc)).

17

limitations. Further, this Court has declined to toll the statute of limitations based on the filing of a claim with the New Jersey Division on Civil Rights, as "the NJLAD does not require a claimant to seek an administrative remedy before proceeding with a judicial remedy." Karapidis v. ACE Gaming LLC, No. 09-3321, 2010 WL 2521209, at *4 n.4 (D.N.J. June 9, 2010) (citing Hernandez v. Region Nine Hous. Corp., 146 N.J. 645 (1996)); Omogbehin v. Dimensions International, Inc., No. 08-3939, 2009 WL 2222927, at *3 (D.N.J. July 22, 2009) (same). Thus, Plaintiff's claims under the NJLAD are barred by the statute of limitations.

## V. CONCLUSION

For the reasons above, the Court denies Defendants' Motion for Summary Judgment with respect to Plaintiff's Title VII claim against HCH, and grants Defendants' Motion for Summary Judgment with respect to Plaintiff's Title VII claim against DeBoer and Plaintiff's NJLAD claim. An appropriate order accompanies this Opinion.

**DATED:** August 21, 2015

/s/ *Claire C. Cecchi*
**CLAIRE C. CECCHI, U.S.D.J.**